ELLEN S. MACFADYEN *vs*. ROBERT L. MAKI.[1]

No. 06-P-1394.

Middlesex. May 9, 2007. - October 31, 2007.

Present: GREEN, SMITH, & GRAINGER, JJ.

*Practice, Civil,* Summary judgment. *Statute,* Construction. *Negligence,* Duty to warn. *Wilful, Wanton, or Reckless Conduct. Farm. Statute,* Construction. *Words,* "Shall."

In a tort action for injuries the plaintiff sustained when she tripped over a snow-covered tree stump at the defendant's "pick-your-own" Christmas tree farm, a Superior Court judge erred in granting summary judgment in favor of the defendant, where he could not avail himself of the limitation on tort liability provided in G. L. c. 128, § 2E, as he had failed to post a warning sign in accordance with that statute. [621-623] GRAINGER, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on April 7, 2005.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion for summary judgment.

*Robert R Berluti* for the plaintiff.

*James T. Scamby* for the defendant.

SMITH, J. The plaintiff, Ellen S. MacFadyen, injured her elbow when she tripped over a snow-covered tree stump while selecting a Christmas tree at the Star of the East Christmas Tree Farm (tree farm), which is owned and operated by the defendant, Robert L. Maki. The plaintiff filed a complaint in Superior Court against Maki, individually and doing business as Star of the East Christmas Tree Farm, alleging negligence (count I), gross negligence (count II), and wilful, wanton, or reckless conduct (count III). The defendant cited G. L. c. 128, § 2E, as an affirmative defense to the plaintiff's claims of negligence

---

[1]Doing business as Star of the East Christmas Tree Farm.

and gross negligence and filed a motion for summary judgment on all counts. After a hearing, the judge allowed the motion as to all three counts. The plaintiff appealed.

We recite the undisputed facts. On December 7, 2002, the plaintiff and her husband (the MacFadyens) went to the tree farm to purchase a Christmas tree as they had done the previous year. After arriving at the tree farm, the MacFadyens boarded a tractor-trailer wagon that the tree farm provided to transport customers to its various Christmas tree fields. At that time those fields were covered by snow from a storm that had occurred the previous evening.

Upon arriving at one of the Christmas tree fields, the Mac-Fadyens got out of the wagon and were greeted by a tree farm employee. The MacFadyens, accompanied by the employee, walked toward an area of the field in which trees were located. The trees had been planted close together in uneven rows, with some missing as a result of having been cut down.

In order to select a Christmas tree, the MacFadyens proceeded to walk through the rows of trees. At some point on her way to view a particular tree, the plaintiff tripped over a tree stump that had been covered by snow from the evening before. In falling, the plaintiff's right elbow struck a second snow-covered tree stump, and she fractured her elbow.

At the time of the fall, no employee of the tree farm had warned the plaintiff of the presence of snow-covered tree stumps. The area where the plaintiff fell had not been identified or marked in any way as hazardous. Further, there was no delineated path along which customers could walk among the rows of trees.

General Laws c. 128, § 2E, inserted by St. 1994, c. 89, § 1, which the defendant cites as an affirmative defense provides, in relevant part, as follows:

> "No owner . . . of a farm who allows any person to enter said farm for the purpose of agricultural harvesting, including the cutting of Christmas trees under a so-called 'pick-your-own' agreement shall be liable for injuries or death to persons, . . . resulting from the conduct of such operation in the absence of wilful, wanton, or reckless conduct on the part of said owner . . . .

"Said owner . . . of said farm shall post and maintain signs which contain the warning notice specified herein. Such signs shall be placed in a location visible to persons allowed to enter said farm for the purpose of agricultural harvesting. The warning notice shall appear on a sign in black letters, with each letter to be a minimum of one inch in height and shall contain the following notice:

"WARNING

"Under section 2E of chapter 128 of the General Laws the owner, operator, or any employees of this farm, shall not be liable for injury or death of persons, or damage to property, resulting out of the conduct of this 'pick-your-own' harvesting activity in the absence of wilful, wanton, or reckless conduct."

It is undisputed that the defendant had not posted the warning sign at the time of the plaintiff's injury.[2]

The plaintiff argued before the motion judge that the statute mandates the posting of such a sign by a proprietor of a "pick-your-own" farm in order to avail himself of the protection of the statute. The defendant responded that the provision for a warning sign in the statute was not compulsory in light of the practical import of the statute, and, therefore, the failure to post the warning sign did not eviscerate the immunity that the statute was intended to provide.

The judge ruled that the word "shall" contained in the warning notice provision made the posting of the notice mandatory. He found, however, that the statute was ambiguous in regard to the effect that the lack of the warning notice had on the limitation on liability provided by the statute. Therefore, based on the fact that the statute had a preamble that made it an emergency act, the motion judge ruled that the failure to post the warning notice did not eliminate the statutorily created limitation on

---

[2]Among the summary judgment materials that the defendant submitted to the motion judge, there was a photograph of a sign allegedly posted at the tree farm that stated "Watch Your Step for Stumps and Hole's." The plaintiff claimed not to have seen the sign and further claimed that the sign did not exist at the time of the fall. Whether the sign existed played no part in the motion judge's analysis, nor in ours.

liability and did not expose "pick-your-own" farms to liability for their negligence or for grossly negligent acts. He allowed the defendant's motion for summary judgment on counts I and II, ruling that the defendant could disclaim liability for all but wilful, wanton, or reckless conduct.

The judge also allowed summary judgment on count III, ruling that the plaintiff, who had previously visited the tree farm (and other tree farms in the past) would have known about the presence of stumps, and therefore, the defendant's conduct, by itself, did not create an unreasonable risk to the plaintiff; further, the defendant's conduct did not exhibit a level of indifference to the consequences of his inaction so as to give rise to liability for intentional misconduct. Thus, the plaintiff had no reasonable expectation of showing that the defendant intentionally disregarded an unreasonable risk to the plaintiff.

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). "Summary judgment is seldom granted in a cause of action alleging reckless or negligent conduct, but this is not an absolute rule." *Nunez* v. *Carrabba's Italian Grill, Inc.*, 448 Mass. 170, 174 (2007).

In this case, we are called upon to interpret a statute. "We exercise de novo review over questions of statutory construction." *Atlanticare Med. Center* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass. 1, 6 (2003). "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Lowery* v. *Klemm*, 446 Mass. 572, 576-577 (2006), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

We agree with the motion judge that the word "shall" in the warning notice provision of the statute makes the posting of the warning notice mandatory. See *Hashimi* v. *Kalil*, 388 Mass.

607, 609 (1983) (" 'shall' is ordinarily interpreted as having a mandatory or imperative obligation"). See *Senior Hous. Properties Trust* v. *HealthSouth Corp.*, 447 Mass. 259, 272-273 (2006).

We disagree that the statute is ambiguous as to the effect of a failure to post the warning notice sign on the statutorily created limitation of liability. "When the ordinary meanings of words yield 'a workable and logical result, there is no need to resort to extrinsic aids in interpreting the statute.' " *Commonwealth* v. *DeBella*, 442 Mass. 683, 687 (2004), quoting from *Hashimi* v. *Kalil, supra* at 610.

Because the posting of the warning notice is mandatory, it is clear from the language of G. L. c. 128, § 2B, that the intent of the Legislature was two-fold: to limit certain "pick-your-own" farms from becoming exposed to claims of negligence and gross negligence from visitors to those farms, and to require those farms to post clear and explicit notices to those visitors that their rights to file certain tort claims had been eliminated, such notices allowing visitors to make an intelligent and informed choice whether to engage in "pick-your-own" activities.[3]

"A basic tenet of statutory construction requires that a statute 'be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.' " *Boston Police Patrolmen's Assn.* v. *Police Dept. of Boston*, 446 Mass. 46, 50 (2006), quoting from *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998).[4]

To hold that the failure to post the warning notice would

---

[3]In comparing the pick-your-own statutes that had been enacted in different States, a commentator interpreted the Massachusetts statute to be "[s]imilar to equine liability statutes [because] a warning requirement serves as a precondition to qualifying for immunity." Centner, Tort Liability for Sports and Recreational Activities: Expanding Immunity for Protected Classes and Activities, 26 J. of Legislation 1, 18 (2000).

[4]The Legislature has also significantly restricted liability for injuries inherent in the sport of skiing by the "Ski Safety Act," G. L. c. 143, §§ 71H-71S. In that area, the Legislature enacted statutes and provided for the promulgation of regulations to ensure the public safety. See, e.g., G. L. c. 143, §§ 71J, 71N, 71R. As a consequence, "the limitation on tort recovery for injuries resulting from risks inherent in the sport of skiing does not remove the incentive for ski area operators to maintain the ski area in a safe condition." *McHerron* v. *Jiminy Peak, Inc.*, 422 Mass. 678, 681 n.4 (1996). By contrast, G. L. c. 128, § 2E, only offers protection to the public through the requirement of the posting of the specified warning.

have no effect on the limitation on tort liability set forth in the statute would render the mandatory requirement to post the warning notice superfluous and give the owner of the tree farm discretion to post the warning notice. Such discretion simply cannot be harmonized with the statute's explicit command that the warning notice be posted.

Therefore, we hold that an owner of a tree farm must post a warning sign in accordance with G. L. c. 128, § 2E, in order to avail himself of the protection of the statute. We reverse the judgment on all counts.[5],[6]

*So ordered.*

GRAINGER, J. I respectfully dissent. I agree with most of the court's well-reasoned decision, except insofar as it appropriates a legislative function at its conclusion. Specifically, it is clear that the word "shall" in the warning notice provision of the statute makes the posting of the warning notice mandatory. Nor is it illogical to assume that the Legislature may have intended the posting to be a condition for the reduced exposure to tort liability which is the statute's underlying purpose. Unfortunately, the statute does not so provide.

The meaning of the text is perfectly clear: it calls for a sign or signs with particular wording[1]; the fact that it fails to prescribe a consequence, leading to some doubt that it will be heeded uniformly, does not make the language superfluous or unclear. The language of a statute is not rendered "inoperative or superfluous,"[2] hence amenable to judicial improvement, because we

---

[5]Summary judgment is seldom granted on those counts alleging wilful, wanton, and reckless conduct. *Inferrera* v. *Sudbury,* 31 Mass. App. Ct. 96, 103 (1991).

[6]We note that the summary judgment proceedings were limited to the interpretation of G. L. c. 128, § 2E, and the application of the open and obvious danger rule was not involved. See *O'Sullivan* v. *Shaw,* 431 Mass. 201, 203-206 (2000). That rule may play a significant role at trial.

[1]I note that the statute requires "signs" without specifying an exact number, and refers to language required on "a sign" rather than all of them. This lack of precision creates additional impediments to strict enforcement or, as here, the imposition of a penalty for noncompliance in the form of fully restored liability, which has been read into the statute by the court.

[2]*Boston Police Patrolmen's Assn.* v. *Police Dept. of Boston,* 446 Mass. 46,

perceive that the legislature has failed to provide sufficient motivation to ensure it will be followed.[3] "It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation." *Prudential Ins. Co. of America* v. *Boston*, 369 Mass. 542, 547 (1976). We will not "read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). I would affirm the judgment.

---

50 (2006), quoting from *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998).

[3]There are of course some remedies, probably less effective, such as injunctive relief and the omnipresent invocation of G. L. c. 93A, which require no special mention in the statute.