Roach, Christine M., J.
Plaintiffs Paul J. McNally, Trustee of New England Laborers’ Training Fund et al. (collectively, the Funds) bring suit to establish and enforce a mechanic’s lien pursuant to G.L.c. 254, §§1, 4, 5 and 11, against Defendant Dominion Energy Salem Harbor (Dominion). The Funds have moved for summaiy judgment. Following hearing February 11, 2010, and for the following reasons, the Funds’ motion for summaiy judgment is ALLOWED IN PART AND DENIED IN PART.
Undisputed Record Facts
Dominion owns property in Salem, Massachusetts, known as Salem Harbor. Dominion contracted with Certified Power Systems (CPS) through a series of purchase orders, under which CPS was to perform work at Salem Harbor. On or about January 5, 2005, CPS executed a Short Form Agreement with the Massachusetts Laborers’ District Council of the Laborers’ International Union of North America (the Union) for the hiring of laborers to perform work on the Salem Harborproject (theproject). Under the agreement, CPS was required to make contributions to the Funds for each hour worked by a covered employee at rates set out in the agreement. The contributions were due on the first of the month or at the conclusion of the first payroll period in the month following the month in which the work was performed. The employer-contributed monies are used by the Funds to provide benefit plans to participant laborers, including defined pension benefits, health and dental benefits, insurance, and individual retirement accounts.
Union employees performed personal labor in the erection, alteration, removal or repair of a building or structure upon land or improvement or alteration to real property (Salem Harbor) by virtue of an agreement with, or by the consent of, Dominion. The Funds claim CPS last performed work at Salem Harbor in June 2008. Dominion, however, relies on CPS’s response to admissions, in which CPS states Union employees last performed work at Salem Harbor on May 9, 2008.
On or about August 19, 2008, the Funds requested an audit of CPS’s payroll records for work performed by Union laborers. The audit revealed CPS had not paid all of its required contributions from April 2008 to June 2008. The unpaid contributions totaled $167,922.63. CPS does not dispute that it owes the Funds this amount. Dominion continued to pay CPS pursuant to the purchase orders, unaware that CPS was not making the required contribution to the Funds. Dominion made its last payment to CPS in the amount of $680.22 on August 1, 2008. As of August 1, 2008, Dominion had paid CPS in full for work performed at Salem Harbor.
On July 25, 2008, the Funds filed anotice ofwritten contract, pursuant to G.L.c. 254, §4, and a statement of amount due, pursuant to G.L.c. 254, §§1 and 8, in the Essex County Registry of Deeds. On July 30, 2008, the Funds mailed a letter to Dominion notifying it that the Funds had filed a mechanic’s lien on Dominion’s Salem Harbor property for unpaid contributions from CPS. Dominion received the letter of notice by certified mail on August 1, 2008. On September 15, 2008, the Funds filed suit in this court to establish and enforce the mechanic’s lien.
Discussion
Summaiy judgment shall be granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). A fact is material if it would affect the outcome of the case. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). A dispute of fact is genuine if the evidence would permit a reasonable factfinder to return a judgment for the non-moving party. Flesner v. Technical Communications Corp., 410 Mass. 804, 809 (1991). The Funds, as the moving party, have the burden to demonstrate, by reference to materials properly in the summaiy judgment record unmet by countervailing materials, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991), that they have standing to enforce a lien pursuant to G.L.c. 254, that they have complied with the statute’s procedural requirements, NG Bros. Construction v. Cranney, 436 Mass. 638, 642 (2002), and the appropriate amount due. The court views the evidence in the light most favorable to Dominion as opposing party, but does not weigh evidence, assess credibility, or find disputed facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
One of the primary purposes of the mechanic’s lien statute, G.L.c. 254, is “to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner’s real estate.” National Lumber Co. v. LeFrancois Constr. Corp., 430 Mass. 663, 668 (2000), quoting Hammill-McCormick Assocs. v. New England Tel. & Tel Co., 399 Mass. 541, 542-43 (1987). Nonetheless, a party seeking to enforce a mechanic’s lien must strictly comply with the statute’s terms. NG Bros. Constr., 436 Mass, at 644. The filing and notice requirements are in place “to protect the owner and others with an interest in the property.” Hammill-McCormick Assocs., 399 Mass. at 543.

*166
Lien Pursuant to G.L.c. 254, §1

Section 1 provides any person “to whom a debt is due for personal labor performed” shall “have a lien upon such building or structure and upon such interest in real property.” The person must have been performing the labor “under an agreement with, or by consent of, the owner of the building or structure, or of a person having authority from or rightfully acting for such owner.” In addition, a §1 lien is limited to the amount due for “not more than thirty-days’ work actually performed for the ninety-days next prior to his filing a statement as provided in section eight [statement of amount due].” A third-party beneficiary of a person to whom amounts are due may file a lien under this section to secure payment.
The only argument advanced by Dominion against a §1 lien is that the Funds should be estopped from pursuing their lien because they failed timely to notify Dominion of CPS’s failure to pay contributions. This argument is unavailing in light of this section’s stringent time limits, which sufficiently protect a property owner from overdue claims of non-payment. The Funds filed their statement of amount due on July 25, 2008, and under the limits in §1 they are entitled to any amount due for up to thirty days of work completed by their participant laborers within the ninety days prior to their filing, that is, on or after April 26, 2008. Plaintiffs Motion with respect to enforcement of a Section 1 lien is therefore ALLOWED.
However, a genuine issue exists as to how many days the Funds’ laborers worked on the project between April 26, 2008 and July 25, 2008. The Funds claim CPS completed work at Salem Harbor in June 2008, but fail to provide the date of the laborers’ last day of work. CPS has stated under oath that the Union laborers last worked at Salem Harbor on May 9, 2008. This dispute of material fact precludes summary judgment on the amount of the lien. Therefore, the Funds’ motion with respect to the proper amount due pursuant to the Section 1 lien, and on which amount judgment may be entered, must be DENIED.

Lien Pursuant to G.L.c. 254, §4

Section 4 provides lien rights to a potentially broader universe, including “whoever furnishes labor, including subcontractor construction management services, or who furnishes material, or both labor and material, or furnishes rental equipment, appliances or tools.” G.L.c. 254, §4, para. 1. Parties filing a lien under §4 must, however, have a written contract with a contractor or a subcontractor of such contractor. Id. The lien claimant must file a notice of contract within certain time frames.[1] Id. at para. 2. The notice of contract may be filed by a person or his third-party beneficiary to whom amounts are due “for or on the basis of the labor of that person performing labor under a written contract with a contractor, or with a subcontractor of such contractor.” Id. at para. 3.
Once a notice of contract has been filed and the owner of the property provided actual notice of the filing, the subcontractor shall have a lien on the real property. Id. at para. 4. The “lien shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner.” Id. (emphasis supplied). If however:
the person claiming a lien under this section has no direct contractual relationship with the original contractor, except for liens for labor by persons defined in section one of this chapter, the amount of such lien shall not exceed the amount due or to become due under the subcontract between the original contractor and the subcontractor whose work includes the work of the person claiming the lien as of the date such person files his notice of contract . . .
Id. at par. 5 (emphasis supplied). This paragraph applies to second-tier subcontractors.
Dominion first claims the Funds do not have standing to establish and enforce a §4 lien. Dominion argues that §4 liens are restricted to those parties who have a written contract with the original contractor, or a subcontractor of the original contractor, and neither the Funds nor the individual laborers have a contract with CPS. This argument is unpersuasive to the court, in light of the language in §4 providing that the notice of contract may also be filed by the third-party beneficiary of a person who may file a lien under §4. The Union is a first tier subcontractor who has a contract with the original contractor, CPS. The Funds are third-party beneficiaries of the first tier subcontract between the Union and CPS. Thus, the Funds have standing to file under §4. Trustees of Iron Workers v. Oxford Sutton Develop., LLC, 2008 WL 4367564 at *3 (Mass.Super. 2008) (Lu. J.) [24 Mass. L. Rptr. 421] (trustee was third-party beneficiary of union laborers hired by contractor pursuant to collective bargaining agreement with union).
Dominion also argues that paragraph four of §4 provides only a subcontractor shall have a lien on real property after filing a notice of contract and notifying the owner. However, the language in paragraph three allowing a subcontractor’s “assignee, agent, authorized representative or third party beneficiary” to file a notice of contract negates Dominion’s interpretation. Paragraphs three and four should be read together to grant a lien to a subcontractor or his assignee, agent, authorized representative or third-party beneficiary upon his filing a notice of contract and actually notifying the owner.
Finally, Dominion argues that even if the Funds have standing to obtain a lien under §4, the lien amount is zero, because the amount of the lien is limited to “the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the *167 owner.”[2] G.L.c. 254, §4 par. 4. As of August 1, 2008, Dominion had paid in full its contract with CPS — the “original contract” referenced in paragraph four. The Funds claim that “(S]ection 4 has no such time limit [as that contained in Section 1] and thus provides for payments of all amounts due under the contract.” But the Funds’ interpretation ignores the clear, limiting language in §4, paragraph four. The Funds do not allege Dominion had any outstanding balance due to CPS under the original contract on August 1, 2008; they simply argue Dominion does not dispute the amount owed by CPS to the Funds.
The Funds go on to argue that the “subcontractor paid in full defense” is not available to Dominion for three reasons: 1) Dominion did not plead it as an affirmative defense in its answer; 2) the Funds are § 1 lien claimants and the “amounts due” limitation in §4 does not apply to them; and 3) CPS has not been paid in full.

Failure to Plead Affirmative Defense

The Funds claim Dominion was required to plead as an affirmative defense in its answer that it owed nothing to CPS, and that the Funds could not establish a §4 lien. Unfortunately the Funds have the burden backwards in this instance. A party seeking to enforce a mechanic’s lien must strictly comply with the statute’s terms. NG Bros. Constr., 436 Mass. at 642. In contrast, “(t]he property owner is not required to plead the language of the statute as an affirmative defense.” National Lumber Co. v. Berke, 72 Mass.App.Ct. 1109, * 4 (2008) (unpublished opinion). The terms of the statute specifically limit the amount due to the amount owed under the original contract. The Funds are charged with perfecting their lien pursuant to the statutory requirements. NG Bros. Constr., 436 Mass, at 644. Because the Funds cannot show that an amount is due under the original contract, they cannot establish a lien under §4.

Intersection of §§1 and 4

The Funds claim paragraph five of §4 allows them to enforce a §4 lien because it creates an exception for §1 claimants. Paragraph five, however, does not apply to the Funds because it applies only to a “person claiming a lien under this Section [§4] [who] has no direct contractual relationship with the original contractor.” The Union has a direct contractual relationship with the original contractor, CPS, and the Funds have full lien rights as a third-party beneficiary of that contract. Therefore, paragraph five is inapplicable.

Amounts Due to CPS from Dominion

Last, the Funds argue Dominion has not paid CPS in full because CPS claims amounts are due on a second (implied, not written) contract for a second Dominion property, the Brayton Point Station project. But it is undisputed Brayton Point is not the contract under which the Union employees were working. CPS hired the Union employees here pursuant to purchase orders from Dominion Energy Salem Harbor. Brayton Point was not part of the Union’s original contract. It is irrelevant that Dominion may owe CPS for other contracts, and this argument fails.
Conclusion
For the above reasons, the Funds’ motion for summary judgment as to their § I lien is ALLOWED with respect to enforcement of the lien and DENIED, with respect to the amount due. The Funds’ motion for summary judgment on the §4 lien is DENIED, and the Section 4 claim is DISMISSED with prejudice.

 Claimant may file at any time not later than: (i) 60 days after filing or recording notice of substantial completion under §2A; (ii) 90 days after filing or recording notice of termination under §2B; or (iii) 90 days after the last day a person entitled to enforce a lien under Section 2 (general contractor liens) performed work or provided materials.

 This provision does not explicitly identify the party who may provide the actual notice to the owner. The court infers, as a matter of statutory constmction, that because a third-party beneficiary may file a notice of contract, the third party may also be the one to provide actual notice to the owner and perfect a lien.